IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 1:17-cv-63

DWAYNE ELLIOTT,

    Plaintiff,

v.

USA FARM LABOR, INC.

    Defendant.

---

## COMPLAINT

---

### PRELIMINARY STATEMENT

1. Plaintiff Dwayne Elliott was denied employment at Simons Farm Service because he is a U.S. worker. As the recruitment and hiring agent for Simons Farm Service, Defendant USA Farm Labor, Inc. filled the job for which Plaintiff Elliott applied even before it was advertised to unemployed U.S. workers. Defendant USA Farm Labor promised its client Simons Farm Service to meet Simons Farm Service's labor needs with legal foreign workers at a more affordable rate than U.S. workers, which they did to the detriment of Plaintiff Elliott.

2. Plaintiff Dwayne Elliott seeks remedies under Title VII of the Civil Rights Act, the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), and the Colorado Anti-Discrimination Act for Defendant USA Farm Labor's unlawful conduct.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 (federal question), 42 USCS § 2000e-2 (Title VII of the Civil Rights Act), and 29 U.S.C. § 1854(a) (AWPA). It has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related claims under Colorado law.

4.  Venue is proper pursuant to 28 U.S.C. § 1391. A substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in Colorado. Defendant USA Farm Labor is a North Carolina corporation doing business in Colorado.

## PARTIES

5.  Plaintiff Dwayne Elliott ("Plaintiff Elliott") resides in Colorado Springs, Colorado and is a veteran of the U.S. Marine Corps.

6.  Plaintiff Elliott grew up on a farm and spent much of his childhood operating tractors and other farm machinery on his uncle's 3400 acre farm.

7.  At all times relevant to this action, Plaintiff Elliott was a "United States worker" as defined by the H-2A Program regulations, 20 C.F.R. § 655.103(b).

8.  At all times relevant to this action, Plaintiff Elliott was also a "migrant agricultural worker" within the meaning of AWPA, 29 U.S.C. § 1802(8)(A) and 29 C.F.R. § 500.20(p). Plaintiff Elliott applied to work as a seasonal farm machine operator at a farm in Hudson, Colorado, starting in March of 2015 and ending in December of 2015. The position was to "operate farm machinery to plant, cultivate, harvest and store grain crops." Hudson, Colorado was several hours from Plaintiff Elliott's home, so Plaintiff Elliott would have needed to stay in temporary housing in Hudson for the duration of the job.

9.  Defendant USA Farm Labor, Inc. is a North Carolina corporation with a registered street address of 248 Holston Village Road, Waynesville, NC 28786.

10.     Defendant actively conducts business in the State of Colorado, including the incidents that gave rise to this Complaint.

11.     On behalf of Simons Farm Service, Defendant applied to and received approval from the federal government to bring temporary foreign workers to the United States through the H-2A Program to work at Simons Farm Service based in Hudson, Colorado.

12.     At all times relevant to this action, Defendant has published a website at http://www.usafarmlabor.com/.

13.     At all times relevant to this action, Defendant recruited and hired temporary foreign workers, promising cost savings to its clients by hiring temporary foreign workers rather than U.S. workers.

14.     At all times relevant to this action, the President and CEO of Defendant USA Farm Labor has been Manual Fick.

15.     At all times relevant to this action, Defendant was a "farm labor contractor" within the meaning of AWPA, 29 U.S.C. § 1802(7) because in exchange for payment Defendant recruited and solicited migrant and seasonal agricultural workers on behalf of Simons Farm Service and its other clients.

16.     At all times relevant to this action, Defendant offered to perform the "advertising as required by the DOL" on behalf of its clients "for a small fee and advertising costs."

17.     Upon information and belief, at all times relevant to this action, USA Farm Labor placed advertisements in newspapers and filed job clearance orders with state workforce agencies to recruit, solicit, and hire migrant and seasonal agricultural workers on behalf of its clients.

18.  USA Farm Labor is not registered with the U.S. Department of Labor ("USDOL")as a farm labor contractor.

19.  At all relevant times, Defendant has been an "employment agency" as defined in 42 U.S.C.S. § 2000e(c) and as defined in C.R.S. § 24-34-401(4) because Defendant regularly undertook to procure employees for Simons Farm Service and its other clients.

## STATEMENT OF FACTS

### A.  Temporary Foreign Agricultural Worker Program (H-2A Program)

20.  The H-2A Program was created under the Immigration and Nationality Act of 1952 ("INA") to admit temporary foreign workers into the United States to fill temporary labor shortages.  8 U.S.C. § 1101(a)(15)(H)(ii).

21.  The interstate clearance order system created under the Wagner-Peyser Act, 29 U.S.C. §§ 49 to 49l-2 and regulations promulgated by the USDOL Secretary, 20 C.F.R. Part 655, Subpart B (2010)(H-2A regulations), assists in determining whether there is, in fact, a domestic labor shortage warranting the entry of foreign workers.  *Alfred L. Snapp & Sons, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 594-95 (1982).  This framework also governs H-2A participants' employment of U.S. workers.  8 U.S.C. § 1188; 20 C.F.R. Part 655, Subpart B.

22.  The H-2A regulations require U.S. workers to have a preference in hiring over H-2A workers and to the extent that foreign workers are brought in, their employment should not adversely affect the wages or working conditions of similarly employed U.S. workers.  20 C.F.R. § 655.100.

23.  An employer seeking to employ H-2A workers must first submit a "job order" on Form ETA-790 (also referred to as "clearance order" or "job offer")  with the state workforce agency so that it will be put into the interstate clearance system to recruit unemployed U.S. workers nationwide.  20 C.F.R. § 655.121(a).  The interstate clearance order system is the

primary means by which USDOL tests the domestic labor market prior to certifying the need for H-2A labor.

24. State workforce agencies are prohibited from accepting into interstate clearance, any job order that offers wages and working conditions less than the prevailing wages and working conditions among similarly employed farmworkers in the area of intended employment. 20 C.F.R. § 653.501(c)(2)(i).

25. The employer then must file the Application for Temporary Employment Certification with USDOL, along with a copy of the job order. 20 C.F.R. § 655.130.

26. The terms of employment set forth in an employer's H-2A Job Order and H-2A Application, including payment of the proper wage, are incorporated by regulation and by operation of law into the contracts under which workers are employed. 20 C.F.R. § 655.122(q).

27. Once USDOL provides the certification of the employer's application, the employer is then permitted to apply for H-2A visas through the U.S. Department of Homeland Security for foreign workers to lawfully enter the United States and fill those positions that the employer has been unable to fill with U.S. workers. 8 U.S.C. § 1188.

28. Although the employer may begin the process to bring in foreign workers upon receiving USDOL's certification of its application, the employer's legal obligation to positively recruit U.S. workers continues until the date the H-2A workers depart for the employer's place of work. 20 C.F.R. § 655.158.

29. The employer must recruit U.S. workers for the available jobs, such as through newspaper advertisements, and must offer terms and conditions of employment no less favorable than those offered to the H-2A workers. 20 C.F.R. §§ 655.151 and 655.152.

30. Protecting the rights and working conditions of U.S. farm workers is essential to the H-2A Program as well as the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"). AWPA has enabled migrant and seasonal farmworkers and their families nationwide to seek better working conditions.

31. Among other things, AWPA requires disclosure of work terms and conditions, employer compliance with working arrangements and wage obligations, and further protects migrant agricultural workers from being told knowingly false or misleading information regarding the terms, conditions or existence of the agricultural employment. 29 U.S.C. §§ 1821-1822.

32. "Any person aggrieved" by a violation of one of these protections has a private right of action pursuant to 29 U.S.C. § 1854(a) and is entitled to recover compensatory or statutory damages. 29 U.S.C. § 1854(c).

33. For purposes of AWPA, the "working arrangement" with an H-2A employer incorporates the substantive requirements imposed by the H-2A and/or Wagner-Peyser Act regulations (i.e. the clearance order, commonly referred to as the work contract).

34. Pursuant to AWPA, an agricultural employer cannot violate the provisions of a working arrangement without justification. 29 U.S.C. § 1822(b).

**B.    Defendant's Business Operations and Discriminatory Operation of Its Website**

35. At all times relevant to this action, Defendant solicited farmer employers to use its services to provide a foreign workforce through the H-2A Program.

36. Specifically, the services Defendant offered at all times relevant to this action, included to locate, recruit, screen, provide orientation, and coordinate travel arrangements for all

workers it provides to its clients. Defendant also completes the H-2A Application and Certification process as part of these services provided.

37. At all times relevant to this action, Defendant referred to its H-2A recruits by using terms such as "OUR WORKERS" and "OUR LABOR" on its website.

38. At all times relevant to this action, Defendant's website provided the ability for its clients to evaluate workers.

39. At all times relevant to this action, Defendant's website stated that it "plays a vital mediating role between you the employer and your worker in time of disagreement and/or conflict. In the event of any serious problems or personality conflicts with a worker, we offer a 30 day 100% money back guarantee with immediate efforts to replace him with a suitable worker."

40. At all times relevant to this action, Defendant encouraged farm employers to use USA Farm Labor's foreign workers because they are less expensive than U.S. workers.

41. At all times relevant to this action, Defendant's website had a chart with a side-by-side comparison of the costs between USA Farm Labor's foreign workers versus U.S. workers, showing how much employers could save for each USA Farm Labor foreign worker they employed versus employing a U.S. worker under the heading "YOU SAVE EACH MONTH!!!!"

42. At all times relevant to this action, Defendant's website claimed that by using Defendant's services, the farming employer "save[s] time and money by not having to advertise, find, and screen U.S. or foreign workers each year."

43. Defendant told its clients, via its website, that it is able to bring back the same workers the following year at the clients' request.

44.     At all times relevant to this action, Defendant restricted who it hired based on race, color, national origin, and ancestry, claiming in multiple locations on its website that its "workers are of European descent and English Speaking."

45.     Even at the time of the filing of this action, Defendant's website states that its "workers are of European descent, [and] speak English."  *See* Record of Def. USA Farm Labor's website (Dec. 20, 2016), *available at* https://perma.cc/Y7PB-52HJ.

46.     At all times relevant to this action, Defendant USA Farm Labor's website claimed to provide workers who are of "European-descent" from two countries outside of Europe—South Africa and New Zealand.

47.     At all times relevant to this action, Defendant restricted the type of worker it provided to its clients by national origin.

C.      **The Discriminatory Act of Refusing to Hire Plaintiff Elliott**

48.     At all times relevant to this action, Defendant took an active role in the hiring process for those hired to work at Simons Farm Service in 2015.

49.     At all times relevant to this action, Defendant was paid by Simons Farm Service to recruit workers in the United States and abroad.

50.     At all times relevant to this action, Defendant was paid by Simons Farm Service to hire workers in the United States and abroad.

51.     At all times relevant to this action, Defendant was paid by Simons Farm Service to furnish workers.

52.     At all times relevant to this action, Defendant recruited and screened workers, coordinated workers' documentation, made travel arrangements, and provided orientation to H-2A workers before delivering them to their farmer employers, including Simons Farm Service.

53. At all times relevant to this action, Defendant had the authority to offer employment at Simons Farm Service.

54. On or around December 10, 2014, Defendant submitted a job order (the "Simons Job Order"), attached as Ex. 1, and an H-2A Application (the "Simons H-2A Application"), attached as Ex. 2, to USDOL seeking seven (7) workers to work as "Agricultural Equipment Operators" at Simons Farm Service.

55. Defendant signed the Simons Job Order and Simons H-2A Application as the "attorney or agent" of Simons Farm Service.

56. Upon information and belief, before submitting the Simons Job Order and Simons H-2A Application, Defendant and Simons Farm Service agreed Defendant would, for a fee, recruit and hire agricultural workers for Simons Farm Service for 2015.

57. Upon information and belief, Defendant was responsible for submitting and in fact submitted the Simons Job Order to the interstate clearance system through the Colorado Department of Labor and Employment, the state workforce agency.

58. On or about January 12, 2015, the Simons Job Order was entered into the state workforce agency system.

59. Upon information and belief, Defendant performed the positive recruitment obligations for Simons Farm Service for the 2015 season as set forth in 20 C.F.R. § 655.158.

60. The Simons Job Order offered seven (7) positions of employment to work at Simons Farm Service as farm machinery operators for 48 hours per week at the rate of pay of $11.37 per hour from March 13, 2015 through December 31, 2015.

61. At the time of submission of the Simons Job Order, Defendant knew that U.S. workers who applied would not be hired for the positions described therein.

62. At the time of submission of the Simons Job Order, Defendant knew that $11.37 was below the prevailing hourly wage rate for farm harvest machine operators in Colorado.

63. Defendant submitted the Simons Farm Service H-2A Application as an agent of Simons Farm Service and knowingly included false statements and certifications, including that the "job opportunity is and will continue to be open to any qualified U.S. worker regardless of . . . national origin . . . and the employer has conducted and will continue to conduct the required recruitment, in accordance with regulations . . . . Any U.S. workers who applied or apply for the job were or will be rejected only for lawful, job-related reasons, and the employer must retain records of all rejections as required by 20 CFR 655.167."

64. Defendant submitted the Simons Job Order as an agent of Simons Farm Service and knowingly included false statements and certifications, including that the "employer agrees to abide by the regulations at 20 CFR 655.135," which state that "[t]he job opportunity is . . . open to any qualified U.S. worker regardless of . . . national origin."

65. Defendant submitted the Simons Farm Service H-2A Application as an agent of Simons Farm Service and knowingly included false statements and certifications, including that Simons Farm Service would "offer, recruit at, and pay a wage that is the highest of the adverse effect wage rate in effect at the time the job order is placed, the prevailing hourly or piece rate, the agreed-upon collective bargaining rate (CBA), or the Federal or State minimum wage."

66. Defendant submitted the Simons Job Order as an agent of Simons Farm Service and knowingly included false statements and certifications, including that the "Adverse Effect Wage Rate, the prevailing hourly wage rate or piece rate, the Federal or State minimum wage rate, or the agreed-upon collective bargaining wage, whichever is greatest, will be the minimum rate of pay."

67. The median and mean hourly wage rates in Colorado in May 2012 as determined by the Bureau of Labor Statistics for agricultural equipment operators—the occupation title for which Plaintiff Elliott applied—were $15.77 and $16.63 respectively. *See* Ex. 3. These were the prevailing wages from May 2012 to May 2015 and the wages applicable to the position at Simons Farm Service for which Plaintiff Elliott applied.

68. The median and mean hourly wage rates in Colorado in May 2015 as determined by the Bureau of Labor Statistics for agricultural equipment operators—the occupation title for which Plaintiff Elliott applied—were $15.47 and $15.68 respectively. *See* Ex. 4. These were the prevailing wages from May 2015 to present.

69. The Simons Job Order was approved and the Simons H-2A Application was certified by USDOL on or about February 26, 2015. Defendant then proceeded to petition H-2A Visas from the U.S. Citizenship and Immigration Services ("USCIS") to employ foreign workers at Simons Farm Service.

70. In reliance upon the false statements and representations that Defendant would not discriminate against U.S. workers based on their national origin and would offer the higher of the Adverse Effect Wage Rate or the prevailing wage rate, USDOL and USCIS allowed Defendant to obtain H-2A visas for foreign workers.

71. Once it was placed into the job clearance system, the Simons Job Order constituted an offer of employment to qualified U.S. workers, including Plaintiff Elliott.

72. The Simons Job Order was used by Defendant as a written disclosure of the terms and conditions of employment.

73. For purposes of AWPA, the Simons Job Order encompassed the "working arrangement" offered by Defendant.

74. In February 2015, Plaintiff Elliott saw the Simons Job Order at the local state workforce center and provided the information necessary to apply for the job, including the requisite proof of his extensive experience in operating farm machinery.

75. In February 2015, Plaintiff Elliott was referred for the job at Simons Farm Service by the state workforce center.

76. Shortly after the referral was made, Pat Simons of Simons Farm Service informed Plaintiff Elliott that there was no work available for Plaintiff Elliott. Mr. Simons told Plaintiff Elliott that he had no need for U.S. workers because of the foreign workers that came every year from South Africa and that the Simons Job Order was only posted with the workforce center to meet a requirement of the federal government.

77. Will Jacobs, outreach specialist with the Adams County Workforce Center, was also informed by Pat Simons that there was no work available for Plaintiff Elliott.

78. Plaintiff Elliott promptly filed an administrative complaint with the Adams County Workforce Center, which was subsequently forwarded to USDOL.

79. Upon information and belief, Defendant recruited approximately seven H-2A workers to fill the positions described in the Simons Job Order.

80. Upon information and belief, Defendant hired approximately seven H-2A workers to fill the positions described in the Simons Job Order.

81. Upon information and belief, a separate work contract was not provided to the H-2A workers hired at Simons Farm Service. Thus, the work contract of Simons Farm Service's H-2A workers and those working in corresponding employment during the same time period was derived of the Simons Job Order and the Simon's H-2A Application.

82. At some point after Plaintiff Elliott filed his administrative complaint (on or around August 27, 2015) Defendant's founder and CEO, Manuel Fick, contacted Plaintiff Elliott claiming to have authorization to resolve any of Plaintiff Elliott's concerns.

83. Manuel Fick informed Plaintiff Elliott that the job he had applied for was not available because the jobs at Simons Farm Service were filled by his foreign workers and that there was no interest in hiring U.S. workers to fill those positions.

84. Manuel Fick then informed Plaintiff Elliott that he would be in contact with him if there was a job opening in the future, but did not do so.

85. On or around August 2015 a representative of Defendant also contacted Adams County outreach specialist, Will Jacobs, regarding Plaintiff Elliott's complaint and claimed to be an authorized hiring agent and representative of Simons Farm Service.

## EXHAUSTION OF REMEDIES

86. On August 24, 2015, Plaintiff Elliott filed a timely charge of discrimination against Defendant with the Colorado Civil Rights Division ("CCRD").

87. Plaintiff Elliott simultaneously filed a timely charge of discrimination against Simons Farm Service. Plaintiff Elliott and Simons Farm Service subsequently settled their dispute.

88. CCRD cross-filed the August 27, 2015 charge against Defendant with the Equal Employment Opportunity Commission ("EEOC").

89. CCRD dismissed the charge against Defendant on October 11, 2016.

90. CCRD's dismissal of the charge against Defendant on October 11, 2016 granted Plaintiff Elliott the right to sue under Colorado and federal law.

## FIRST CLAIM FOR RELIEF

**(Defendant's Violation of 42 USCS § 2000e-2(b) – Employment Agency Discrimination)**

13

91. Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

92. Defendant refused to refer Plaintiff Elliott for employment because of Plaintiff Elliott's national origin.

93. As a direct result of Defendant's illegal and discriminatory conduct, Plaintiff Elliott suffered damages.

**SECOND CLAIM FOR RELIEF**

**(Defendant's Violation of 29 U.S.C. § 1822(c) – Migrant and Seasonal Agricultural Worker Protection Act (AWPA))**

94. Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

95. The Simons Job Order constituted a "working arrangement" within the meaning of AWPA, between Plaintiff and Defendant.

96. Plaintiff Elliott's working arrangement included the terms of the work contracts as described in ¶ 81.

97. The Simons Job Order was used by Defendants to satisfy the written disclosures provision of AWPA, 29 U.S.C. §§ 1821(a).

98. Defendant knowingly provided false and misleading information to the DOL and Plaintiff Elliott concerning the terms, conditions and existence of employment by Defendant in contravention of AWPA, 29 U.S.C. §§ 1821(f), by:

    a. informing Plaintiff that the job was not available;

    b. failing to recruit and hire Plaintiff after his interest was known;

    c. including assurances set forth in the Simons Job Order that qualified U.S. workers would be hired to work at Simons Farm Service and U.S. workers would not be discriminated against on the basis of their national origin;

    d. stating that workers would be paid the higher of the Adverse Effect Wage Rate or the prevailing wage, when in fact they were offering only $11.37 per hour.

99. Defendant intentionally failed to offer and provide employment to Plaintiff in violation of 29 U.S.C. § 1822(c).

100. Defendant is not registered as a farm labor contractor, in violation of 29 U.S.C. § 1811(a).

101. Defendant's violations of AWPA occurred as part of its regular business practices and were the natural consequences of its conscious and deliberate actions and were thereby intentional within the meaning of AWPA, 29 U.S.C. § 1854(c)(1).

102. As a result, Plaintiff Elliott suffered damages.

**THIRD CLAIM FOR RELIEF**

**(Defendant's Violation of C.R.S. § 24-34-402(1)(e) – Aiding and Abetting Discrimination)**

103. Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

104. Simons Farm Service refused to hire Plaintiff Elliott and discriminated against Plaintiff Elliott, an otherwise qualified individual, because of Plaintiff Elliott's national origin in violation of C.R.S. § 24-34-402(1)(a).

105. Defendant, by its acts and omissions, aided and abetted Simons Farm Service in the commission of a violation of C.R.S. § 24-34-402(1)(a).

106. As a direct result of Defendant's illegal and discriminatory conduct, Plaintiff Elliott suffered damages.

## FOURTH CLAIM FOR RELIEF

**(Defendant's Violation of C.R.S. § 24-34-402(1)(d) – Circulation of Discriminatory Statement)**

107. Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

108. Via its website, Defendant circulated or caused to be circulated a statement, advertisement, or publication that expresses limitations, specifications, or discrimination as to national origin, race, color, and ancestry.

109. There is no bona fide occupational qualification requiring a limitation on the national origin, race, color, and ancestry for Defendant or its clients.

110. As a direct result of Defendant's illegal and discriminatory conduct, Plaintiff Elliott suffered damages.

## FIFTH CLAIM FOR RELIEF

**(Defendant's Violation of C.R.S. § 24-34-402(1)(b) – Employment Agency Discrimination)**

111. Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

112. Defendant refused to refer for hire Plaintiff Elliott for employment in a known available job for which Plaintiff Elliott was qualified because of Plaintiff Elliott's national origin.

113. As a direct result of Defendant's illegal and discriminatory conduct, Plaintiff Elliott suffered damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his behalf and against Defendant and award Plaintiff the following:

a. declaring that Defendant violated Title VII of the Civil Rights Act;

b.  judgment in favor of Plaintiff and on his claims under Title VII and awarding damages;

c.  declaring that Defendants violated AWPA;

d.  judgment in favor of Plaintiff and on his claims under AWPA and awarding damages;

e.  permanently enjoining Defendant from violating AWPA and the H-2A regulations by discriminating against U.S. workers in favor of H-2A workers;

f.  declaring that Defendant violated the Colorado Anti-Discrimination Act;

g.  judgment in favor of Plaintiff and on his Colorado Anti-Discrimination Act claims and awarding damages;

h.  judgment in favor of Plaintiff and awarding all damages pursuant to Colorado and federal law;

i.  compensatory damages, including for emotional distress, as allowed by law, attorney fees and costs as provided for by law; and

j.  pre- and post-judgment interest, costs and expert witness fees, and such other relief as the Court deems just and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

This 9th day of January, 2017.

/s Matthew R. Baca
Jenifer C. Rodriguez
Matthew R. Baca
Colorado Legal Services – Migrant Farm Worker Division
1905 Sherman Street, Suite 400
Denver, CO 80203
Tel. (303) 866-9366
Fax (303) 863-8589
mbaca@colegalserv.org
*Attorneys for Plaintiff*